**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

PRESTON PARRISH and MARIE
PARRISH,

Plaintiffs,

v.

TACO BELL CORP., TACO BELL OF
AMERICA, LLC, and TAYLOR FRESH
FOODS, INC. d/b/a TAYLOR FARMS

Case No.

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Plaintiffs Preston and Marie Parrish, by and through their attorneys, OFT Law PLLC, for their Complaint state and allege the following:

## INTRODUCTION

1. This case arises out of one of the largest outbreaks of illnesses caused by the parasite *Cyclospora* in United States history.

2. Plaintiffs and more than 1,600 other people in multiple states contracted the parasite from contaminated lettuce produced by Defendant Taylor Fresh Foods, Inc. d/b/a Taylor Farms sold at the Taco Bell restaurant in Durand, Michigan.

3. Defendant Taylor Farms' ready-to-eat fresh produce was contaminated with the parasite *Cyclospora* as a result of fecal contamination, likely fecal-contaminated water.

4. Plaintiffs seek reasonable compensation for all the damages caused by Defendants' defective product and negligence.

**PARTIES**

5.      Plaintiffs are married and both residents of Durand, Michigan in Shiawassee County, Michigan. Plaintiffs are citizens of Michigan.

6.      Defendant Taylor Fresh Foods, Inc. (hereinafter "Taylor Farms") is a corporation organized under the laws of Delaware, with a principal place of business and corporate headquarters located at 911-B Blanco Circle, Salinas, California 93901, doing business as "Taylor Farms." Accordingly, it is a citizen of California.

7.      Taylor Farms manufacturers, distributes and sells produce items across the United States, including the State of Michigan.

8.      On information and belief, Taylor Farms owns, operates, and controls several subsidiaries it uses to produce items, including the lettuce product that caused the outbreak at Taco Bell restaurants.

9.      Defendant Taco Bell Corp. (hereinafter "Taco Bell") is a corporation organized under the laws of California, with a principal place of business and corporate headquarters located at 1 Glen Bell Way, Irvine, California 92618, doing business as "Taco Bell." Taco Bell Corp. is a wholly-owned subsidiary of Yum! Brands, Inc. Its registered agent for service of process is C T Corporation System. Accordingly, it is a citizen of California.

10.      Defendant Taco Bell of America, LLC (hereinafter "Taco Bell of America") is a limited liability company organized under the laws of Delaware, with a principal place of business and corporate headquarters located at 1 Glen Bell Way, Irvine, California 92618. Taco Bell of America, LLC is the franchisor entity that licenses and franchises Taco Bell-branded restaurants, including the restaurant located at 8831 E. Lansing Road, Durand, Michigan. Its registered agent for service of process is C T Corporation System.

11.     Upon information and belief, none of the members of Taco Bell of America, LLC is a citizen of the State of Michigan, and its members are citizens of the States of California and/or Delaware. Accordingly, Defendant Taco Bell of America, LLC is not a citizen of Michigan and is completely diverse from Plaintiffs.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(c) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiffs and Defendants.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims asserted occurred in this district.

## FACTUAL BACKGROUND

14.     *Cyclospora* is a protozoan parasite that causes severe gastroenteritis in humans called cyclosporiasis.

15.     The parasite *Cyclospora* was first described by Dr. Ashford, a British parasitologist, in 1979 after being found in a stool sample from sickened people in Papua New Guinea in 1977 and 1978.

16.     In the 1990s, *Cyclospora* garnered increasing interest from the scientific and public health communities after it was identified as the cause of outbreaks of diarrheal illness in the United States. Since then, scientific understanding of *Cyclospora*'s source and infectious process has grown substantially.

17.     Humans contract *Cyclospora* infections from eating food or drinking water contaminated with *Cyclospora.*  Contamination of food often occurs when produce is irrigated or washed in water contaminated with human feces.

18. Humans are the only known carriers of *Cyclospora,* and *Cyclospora* uses the human body to complete part of its reproductive life cycle.

19. The CDC outlines the life cycle of *Cyclospora* in the following diagram:



20. *Cyclospora* oocysts are excreted in the feces of infected people.

21.     Fresh excreta containing unsporulated (immature) oocysts is noninfectious. Instead, the oocysts must sporulate in order to become infectious. Therefore, *Cyclospora* is not known to be transmitted directly from person-to-person.

22.     Oocysts sporulate within 1-2 weeks, depending on environmental conditions. After sporulation, the sporont becomes two sporocysts, each containing two elongated sporozoites.

23.     After sporulation, the *Cyclospora* organism is infectious, and when consumed by humans, causes illness.

24.     Put simply, feces must contaminate food or water and then remain there long enough to sporulate in order to cause illness.

25.     Within the human body, oocysts excyst, or emerge, in the gastrointestinal tract, freeing the sporozoites, which invade the epithelial cells of the small intestine.

26.     Inside the cells of the small intestine, they undergo asexual multiplication and sexual development to mature into oocysts, which are shed in stools.

27.     Because oocysts are only excreted in feces, individuals that contract cyclosporiasis have consumed food or water contaminated with feces.

28.     Symptoms of cyclosporiasis include watery diarrhea, loss of appetite, cramping, nausea, fatigue, fever, dehydration, and weight loss.

29.     Untreated, these symptoms can last several weeks or longer, resulting in extreme dehydration and other more serious side effects.  *Cyclospora* infections in the United States are typically diagnosed by a specific test for the parasite.

30.     Treatments for *Cyclospora* typically include administration of an antibiotic, sulfamethoxazole – trimethoprim (Bactrim).

31.     Unfortunately, antibiotic treatment is not always effective. Some cyclosporiasis patients require months-long antibiotic treatment before resolution of their illness.

32.     Moreover, many people are allergic to sulfa-antibiotics. No alternative highly effective treatment exists, but some providers prescribe ciprofloxacin or nitazoxanide (Alinia).

33.     Numerous previous outbreaks of *Cyclospora* in the United States have been associated with consumption of fecal-contaminated fruits and vegetables, including raspberries, mesclun, basil, lettuce, and cilantro.

34.     Responsible producers of ready-to-eat produce therefore carefully screen and inspect their growers and suppliers, particularly during the summer months in regions where *Cyclospora* is endemic.

35.     Within the food industry and public health community, it is well known that produce grown and processed in Mexico during the summer months is at a high risk of *Cyclospora* contamination.

36.     Produce grown in Mexico is at a higher risk because *Cyclospora* is endemic to the local human population, and the region's warm, humid climate provides the perfect environment for the parasite's eggs to become infectious. It typically spreads to fields through irrigation water contaminated by human sewage runoff.

37.     Responsible producers of ready-to-eat produce also take steps to ensure their food is free of fecal matter and dangerous organisms like *Cyclospora*, particularly when produced in higher-risk regions like Mexico.  The duty owed by produce producers includes a duty to develop a food safety program; follow good agricultural practices; monitor and test its products and processing environments; and otherwise ensure that its ready-to-eat products are not exposed to fecal matter.

38.     Responsible fresh produce producers conduct their operations in compliance with all applicable state and federal regulations intended to ensure the purity and safety of food products, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*).

**Taylor Farms History of Foodborne Illness Outbreaks**

39.     Defendant Taylor Farms has a documented history of producing and selling fresh produce contaminated with dangerous pathogens, including the parasite *Cyclospora*, and of being identified by public health authorities as the source of prior multistate foodborne illness outbreaks.

40.     Notwithstanding this history, Taylor Farms holds itself out to the public and to its restaurant and retail customers as an industry leader in food safety, representing that it maintains rigorous food-safety, sanitation, and testing programs designed to ensure that its ready-to-eat produce is safe and fit for human consumption.

41.     Taylor Farms' representations regarding the safety of its produce are belied by its record. On multiple prior occasions, Taylor Farms produce has been identified by public health authorities as the source of foodborne illness outbreaks.

42.     In 2013, a multistate outbreak of cyclosporiasis sickened at least 631 people across 25 states. Public health investigators traced that outbreak to a contaminated salad mix produced by Taylor Farms at one of its processing facilities, with many of the illnesses occurring among patrons of Olive Garden and Red Lobster restaurants.

43.     In 2024, ready-to-eat produce supplied by Taylor Farms, in the form of slivered onions, was identified by public health authorities as the source of a multistate outbreak of *E. coli* O157:H7 that caused numerous illnesses, hospitalizations, and death among restaurant customers.

44.     As a result of these and other prior outbreaks, Taylor Farms had actual and constructive knowledge, well before the events giving rise to this Complaint, that its ready-to-eat produce, including its leafy green and lettuce products, posed a recognized risk of contamination with *Cyclospora* and other pathogens and had repeatedly caused serious illness. Taylor Farms therefore knew, or in the exercise of reasonable care should have known, of the heightened need to prevent such contamination.

### Taco Bell's Control Over Its Restaurants and Supply Chain

45.     At all relevant times, Defendants Taco Bell Corp. and Taco Bell of America, LLC (collectively, the "Taco Bell Defendants") owned, licensed, and controlled the Taco Bell brand, system, and standards under which the Taco Bell restaurant located at 8831 E. Lansing Road, Durand, Michigan (the "Durand Restaurant") operated.

46.     The Taco Bell Defendants developed, established, and required strict adherence to uniform operating standards, food-safety protocols, recipes, menu specifications, and food-handling and preparation procedures at all Taco Bell restaurants, including the Durand Restaurant.

47.     The Taco Bell Defendants selected, approved, and required the suppliers and distributors from which their restaurants, including the Durand Restaurant, obtained food and ingredients, including the ready-to-eat lettuce supplied by Defendant Taylor Farms. Taco Bell restaurants were not permitted to deviate from these approved and mandated sources.

48.     The Taco Bell Defendants designed, managed, and controlled the national and regional supply chain through which their restaurants, including the Durand Restaurant, were required to obtain produce and other ingredients, including the contaminated lettuce that caused the outbreak alleged herein.

49.     The Taco Bell Defendants retained and exercised the right to control the means and methods by which food was received, stored, prepared, and served at their restaurants, including through mandatory training programs, operations and food-safety manuals, and routine inspections and audits of their restaurants, including the Durand Restaurant.

50.     By reason of the control described above, those who prepared and served food at the Durand Restaurant acted as the actual and/or apparent agents, servants, and/or employees of the Taco Bell Defendants, acting within the course and scope of that agency and authority, and the Taco Bell Defendants are vicariously liable for their acts and omissions.

51.     The Taco Bell Defendants held the Durand Restaurant out to the public, including Plaintiffs, as a "Taco Bell" restaurant, bearing Taco Bell's trademarks, signage, and trade dress. Plaintiffs reasonably believed they were purchasing food from Taco Bell and reasonably relied on the Taco Bell brand and its representations regarding the quality and safety of its food in purchasing and consuming the food that caused their injuries.

### The 2026 Cyclospora Outbreak Linked to Taco Bell and Taylor Farms

52.     Beginning in or about May 2026, a multistate outbreak of cyclosporiasis linked to food served at Taco Bell restaurants emerged in the United States. According to the FDA, the illnesses in this outbreak are a subset of the *Cyclospora* illnesses identified nationwide during 2026.

53.     The United States Food and Drug Administration (FDA) and the United States Centers for Disease Control and Prevention (CDC), in collaboration with state and local partners, investigated the outbreak. As of July 16, 2026, five states—Indiana, Kentucky, Michigan, Ohio, and West Virginia—had reported a total of 1,644 people infected with *Cyclospora* who also

reported exposure to Taco Bell. Reported illness-onset dates ranged from May 13, 2026, to July 13, 2026. Ninety-four people were hospitalized, and no deaths were reported.

54.     Because public health authorities report only laboratory-confirmed cases, and because reporting lags the onset of illness, the confirmed case count understates the true number of persons sickened in the outbreak.

55.     Michigan has been among the most heavily affected states in the outbreak. The Michigan Department of Health and Human Services announced the outbreak in Michigan on or about July 1, 2026, in a state that ordinarily records only approximately 40 to 50 cyclosporiasis cases in an entire year. State-reported counts, which include both probable and confirmed cases, have substantially exceeded the number of laboratory-confirmed cases attributed to the outbreak nationally.

56.     The CDC identified a common source linking cases across Indiana, Kentucky, Michigan, Ohio, and West Virginia, and determined those cases to be part of a single multistate outbreak.

57.     The FDA led the investigation into the outbreak. Investigators determined that a high proportion of the individuals sickened in the affected states had eaten at Taco Bell restaurants, and that shredded iceberg lettuce was the food item those individuals had in common. In Michigan, ingredient-level analysis of cases who reported eating at Taco Bell found that approximately 90 percent reported eating iceberg lettuce.

58.     The FDA's traceback investigation identified convergence on a single supplier of shredded iceberg lettuce from Mexico that was used by the Taco Bell locations where sickened individuals had eaten before becoming ill.

59.     On information and belief, and consistent with public reporting concerning the outbreak, the supplier of the shredded iceberg lettuce identified through the FDA's traceback investigation was Defendant Taylor Farms, which grew, processed, and/or supplied the shredded iceberg lettuce that was served at the implicated Taco Bell restaurants and that was contaminated with *Cyclospora*.

60.     In response to the investigation, Taco Bell eventually removed shredded iceberg lettuce and other implicated produce from affected restaurants and committed to stop using lettuce from the supplier identified through the FDA's traceback investigation.

61.     Plaintiffs Preston and Marie Parrish consumed shredded iceberg lettuce served at Defendant Taco Bell's restaurant in Durand, Michigan on June 30, 2026.

62.     The lettuce they consumed was grossly contaminated with fecal matter containing the Cyclospora parasite.

63.     On information and belief, Defendant Taylor Farms grew, processed, and/or supplied the contaminated lettuce prepared and sold by Taco Bell and consumed by Plaintiffs.

64.     As a direct and proximate result of consuming that contaminated lettuce, Plaintiffs contracted cyclosporiasis as part of the 2026 outbreak described above.

### Count I - Breach of Warranty

65.     Plaintiffs incorporate by reference and make a part of this count, each and every foregoing paragraph of this Complaint.

66.     Defendants produced, distributed, and sold the contaminated food products that injured Plaintiffs and caused their respective *Cyclospora* infections. Defendants are, therefore, a manufacturer, distributor, and/or seller of an adulterated food product, and the adulterated food product reached Plaintiffs without substantial change from the condition in which it was sold by Defendants.

67.     Defendants are subject to liability to the Plaintiffs for their breaches of express and implied warranties made to Plaintiffs with respect to the food product sold to them, including the implied warranties of merchantability and of fitness for a particular use. Further, Defendants expressly warranted, through the sale of food to the public, and by the statements and conduct of their employees and agents, that the food product ultimately sold to Plaintiffs was fit for human consumption, and not otherwise adulterated or injurious to health.

68.     The food product sold by Defendants and ultimately consumed by Plaintiffs, which product was contaminated with *Cyclospora* and related filth and adulteration, would not pass without exception in the trade and was thus in breach of the implied warranty of merchantability.

69.     Plaintiffs further allege that the contaminated food sold by Defendants and consumed by Plaintiffs was not fit for the uses and purposes intended by either Plaintiffs or Defendants, i.e., human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

70.     As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees as set forth above, Plaintiffs suffered a cyclospora infection and the adverse effects associated with this infection, as described in previous paragraphs of this complaint.

71.     As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiffs were forced to endure great pain, suffering, and inconvenience and may endure the same in the future. Plaintiffs were forced to submit to medical care and may be forced to submit to the same in the future.

72.     As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiffs suffered an inability to perform the activities of daily living or some of them.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

### Count II - Negligence

73.     Plaintiffs incorporate by reference and make a part of this Count, each and every foregoing paragraph of this Complaint.

74.     Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food product that injured Plaintiffs including the applicable provisions of the Federal Food Drug and Cosmetic Act, and similar Michigan food and public health statutes, including without limitation the provisions of MCLA 289.5101 which prohibits the manufacture and sale of any food that is adulterated or produced in unsanitary conditions.

75.     The food product that Defendants manufactured and sold, and that Plaintiffs purchased and consumed, was adulterated within the meaning of the federal Food, Drug and Cosmetic Act, and similar Michigan statutes, because it contained a deleterious substance that rendered it injurious to health, i.e., the *Cyclospora* parasite.

76.     Defendants violated federal, state, and local food safety regulations by their manufacture and sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the manufacture and sale of food. The violation of these regulations constitutes evidence of negligence.

77.     Plaintiffs are in the class of persons intended to be protected by these statutes and regulations, and were injured as the direct and proximate result of the Defendants' violation of applicable federal, state, and local food safety regulations.

78.     Defendants were negligent in the manufacture, distribution, and sale of a food product that was adulterated with *Cyclospora*, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

79.     Once Defendants learned, or in the exercise of reasonable care should have learned, of the dangers associated with preparing and selling food, including, but not limited to, cross-contamination between foods, and the dangers associated with improperly cleaned or washed food, they had a duty to warn Plaintiffs but failed to do so.

80.     Defendants had a duty to use supplies and raw materials in producing their food products that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from reliable sources; and that were clean, wholesome, free from adulteration, and fit for human consumption, but failed to do so, and therefore breached that duty.

81.     Defendants were negligent in the selection of their suppliers, or other agents or subcontractors, and failed to adequately supervise them, or provide them with adequate standards, and, as a result, produced and sold food that was adulterated with *Cyclospora*.

82.     Defendants had a duty to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, engaged in the preparation and sale of their food products, to ensure compliance with Defendants' operating standards and to ensure compliance with all applicable health regulations. Defendants failed to properly supervise, train, and monitor these employees engaged in the manufacture, preparation and delivery of the food product ultimately sold to Plaintiffs that made them sick and thus breached that duty.

83.     Defendant Taco Bell had a duty, given its knowledge of prior outbreaks of *Cyclospora* and other pathogens on leafy greens lettuce and other produce, to take reasonable measures to ensure that the produce utilized by its restaurants nationally were safely grown; were not grown in proximity to sewers or other sources of fecal-water contamination; were not grown in proximity to recognized vectors for the transmission of *Cyclospora*; and were not grown under conditions, generally, that are known, or reasonably should be known, to the food industry to be unsafe.

84.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered the injuries and damages set forth here.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

### Count III - Negligence *Per Se*

85.     Plaintiffs incorporate by reference and make a part of this Count, each and every foregoing paragraph of this Complaint.

86.     The Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 et seq.), and the Michigan adulterated food statutes (MCL 289.5101.).

87.     Plaintiffs are in the class of persons intended to be protected by these statutes and regulations, and Plaintiffs were injured as the direct and proximate result of the Defendants' violation of applicable federal, state, and local food safety regulations.

88.     The Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, and sale of food adulterated with *Cyclospora*, a potentially deadly pathogen.

89.     As a direct and proximate result of conduct by the Defendants that was negligent *per se*, Plaintiffs suffered the injuries and damages set forth here.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

### Count IV - Violation of Michigan Consumer Protection Act

90.     Plaintiffs incorporate by reference and make a part of this Count each and every foregoing paragraph of this Complaint.

91.     The Defendants breached an implied warranty that resulted in violations of the Michigan Consumer Protection Act, entitling the consumer to attorney fees under MCL 445.911.

92.     The Defendants engaged in unfair, unconscionable or deceptive methods, acts or practices in conduct of trade or commerce, in violation of MCL 445.903, which include but are not limited to:

a.  Causing a probability of confusion, or misunderstanding as to the source, approval or certification of goods, (1)(a);

b.  Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have, (1)(c);

c.  Representing that goods are of a particular standard, quality, or grade, (1)(e);

d.  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, (1)(s).

93.     As a direct and proximate result of conduct by the Defendants that violated the Michigan Consumer Protection Act, Plaintiffs suffered the injuries and damages stated here.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

### Count V - Strict Liability

94.     Plaintiffs incorporate by reference and make a part of this count, each and every foregoing paragraph of this Complaint.

95.     At all relevant times, the Defendants were manufacturers and sellers of the adulterated food product that is the subject of the action.

96.     The adulterated food product that the Defendants manufactured, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Cyclospora*, a potentially deadly pathogen.

97.     The adulterated food product that the Defendants manufactured, distributed, and/or sold was delivered to Plaintiffs without any change in its defective condition. The adulterated food product that the Defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by Plaintiffs.

98.     The Defendants owed a duty of care to Plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogens or other substances injurious to human health. Defendants breached this duty.

99.     Defendants owed a duty of care to Plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. Defendants breached this duty.

100.    Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the Defendants manufactured, distributed, and/or sold.

101.    Defendants are strictly liable for these breaches and violations, causing the injuries and damages set forth here.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

### Count VI - Damages

102.    Plaintiffs incorporate by reference and make a part of this Count, each and every foregoing paragraph of this Complaint.

103.    Plaintiffs have and will continue to suffer general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendants as stated in this Complaint, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

WHEREFORE, Plaintiffs demand Judgment in their favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with costs, interest and attorney fees so wrongfully incurred.

## JURY DEMAND

104.    Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

OFT LAW PLLC

By: _____

Brendan Flaherty, MN #0327657
Ryan Osterholm, MN #0390152
OFT Law PLLC
800 LaSalle Avenue, Suite 2260
Minneapolis, MN 55402
Attorneys for Plaintiffs

Dated: July 17, 2026